AO 91 (Rev. 11/11) Criminal Complaint

**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
**FILED**
*September 11, 2020*

David J. Bradley, Clerk of Court

United States of America
v.
Michael GARNER
Benard JONES
Tyson BARNETT
Stevie DORSEY

Defendant(s)

Case No. **4:20mj1699**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of April 17, 2019-September 01, 2020 in the county of Harris in the Southern District of Texas, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC Section 846, 841 a(1) and (b)1(C) | Knowingly, intentionally, and unlawfully possess with intent to distribute methamphetamine, and conspiracy to possess with intent to distribute methamphetamine, a Schedule II controlled substance. In violation of 21 USC Section 846, 841 a(1) and (b)1(C) |

This criminal complaint is based on these facts:

See Attachment "A"

☑ Continued on the attached sheet.

*Complainant's signature*

Jason Rogers, Dea Task Force Officer
*Printed name and title*

Sworn to before me telephonically.

Date: September 11, 2020

*Judge's signature*

City and state: Houston, Texas    Sam S. Sheldon U.S. Magistrate Judge
*Printed name and title*

**Attachment "A"**

Your affiant, DEA Task Force Officer Jason Rogers, being duly sworn, deposes and states the following:

1. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. Since February 2019, agents of the Drug Enforcement Administration (DEA), Federal Bureau of Investigation (FBI), Houston Police Department, along with Texas Department of Public Safety (DPS), Deer Park Police Department, Baytown Police Department, Navasota Police Department, Texas Department Criminal Justice (TDCJ), Pasadena Police Department, and the Harris County Precinct Five Constable's Office have been conducting an investigation into the heroin, cocaine and methamphetamine trafficking activity of a Houston based Drug Trafficking Organization (DTO). During the course of this investigation, agents have utilized confidential sources, surveillance, controlled purchases of narcotics, telephone toll analysis, pen registers, precise GPS location services, pen toll analysis, physical and electronic surveillance, and court-authorized T-III interceptions of devices carried by multiple targets of this investigation to identify Michael GARNER (hereinafter referred to as GARNER), Benard JONES (hereinafter referred to as JONES), Tyson BARNETT (hereinafter referred to as BARNETT), and Stevie DORSEY (hereinafter referred to as DORSEY) as members of a Houston based DTO working together at the direction and control of GARNER (a documented Gangster Disciple gang member according to law enforcement databases), utilizing multiple locations to manufacture and distribute multi-kilogram quantities of methamphetamine, china white heroin, cocaine, and crack cocaine.

3. During this investigation, agents learned from identified witnesses and surveillance that GARNER was acting in a high ranking position of this DTO coordinating with multiple sources of supply for methamphetamine, china white heroin, and cocaine. Through the course of the investigation, agents identified 12218 Starlit Morning Dr, Houston, Texas; 7738 Morley St, Houston, Texas; 8118 Detroit St, Houston, Texas; and 8719 La Porte Rd, Houston, Texas as residential properties being utilized by this DTO and under the control of GARNER to manufacture, distribute, and stash methamphetamine, china white heroin, cocaine, and crack cocaine along with proceeds gained by the sales of methamphetamine, china white heroin, cocaine, and crack cocaine.

4. On April 17, 2019, agents conducted a controlled purchase of approximately 114 grams of crystal methamphetamine for $800.00 United States Currency (USC) utilizing a confidential source (hereinafter referred to as CS) and an undercover agent (hereinafter referred to as a UC). On this date, the CS placed a phone call to GARNER that was recorded and monitored by controlling agents and negotiated to meet with GARNER at a carwash located at 7820 Rockhill St, Houston, Texas to purchase 114 grams of crystal methamphetamine. During this operation, controlling agents met with the CS prior to the CS and UC departing to the meeting location and searched the CS to ensure the CS was clear of any and all contraband. While this was

taking place, CS and UC were advised by GARNER that he was already at a different location and instructed the CS to go to the carwash and that GARNER would send someone to meet the CS and UC. On this same date, CS and UC traveled in the UC vehicle to 7820 Rockhill and parked inside a carwash bay. Immediately after the UC parked in the bay, a gray Lexus arrived and pulled directly behind the UC vehicle at an angle. The CS was provided the $800.00 USC by the UC and exited the vehicle and conducted the purchase with First Name Unknown, Last Name Unknown, aka MEANY, who was identified by the CS as a courier for GARNER. The UC was able to physically observe the transaction and took immediate custody of the narcotics from the CS once the CS returned to the UC vehicle.

5. On December 6, 2019, agents conducted a controlled purchase of approximately 5 grams of crack cocaine utilizing a CS and UC after sources and surveillance identified 8118 Detroit St, Houston, Texas as a stash house location utilized by GARNER and DTO members to distribute methamphetamine, china white heroin, cocaine, and crack cocaine. During this operation, the CS placed a recorded call to GARNER at the direction of controlling agents. After the call to GARNER, CS traveled with the UC in UC's vehicle to 8118 Detroit St, Houston, Texas. The UC dropped the CS off across the street from 8118 Detroit and provided the CS $200.00 USC. The CS walked to the back door of 8118 Detroit St and then returned with approximately 5 grams of crack cocaine. The CS was equipped with an audio/video recording device, and agents could hear the CS speaking with JONES. Agents learned from the audio recording and directly from CS that JONES actually manufactured the crack cocaine in front of the CS prior to selling the crack cocaine to the CS. During this operation, CS was able to initiate conversation with JONES for prices of crystal methamphetamine. CS was quoted $20.00 per gram by JONES. The CS was searched before and after this operation to ensure CS had no contraband prior to the drug transaction.

6. On February 24, 2020, agents conducted a controlled purchase of approximately 56 grams of crystal methamphetamine for $400.00 USC from BARNETT, facilitated by GARNER utilizing a CS and UC. On this date, CS placed a recorded phone call at the direction of controlling agents to GARNER, and CS was instructed by GARNER to "come on." Affiant knows from previous controlled purchases of narcotics and numerous authorized T-III interceptions of communications with GARNER Target Devices, that GARNER will tell known purchasers of narcotics to "come on," indicating that he knows exactly why the person is calling and is known to not like to talk specifics over cellular telephones in attempt to elude law enforcement. After the call to GARNER was placed, the CS and UC traveled in the UC vehicle to 8118 Detroit St, Houston, Texas and pulled into the driveway. The CS then exited the UC vehicle and walked to the back door of 8118 Detroit St. The CS then returned to the UC vehicle and immediately handed the UC the 56 grams of crystal methamphetamine the CS purchased within 8118 Detroit St. During the CS debrief, CS identified BARNETT as the individual who actually conducted the transaction and advised that GARNER was at the residence during the transaction and even instructed BARNETT to ask the CS who the driver was that drove the CS.

7. On March 4, 2020, agents conducted a controlled purchase of approximately 114 grams of crystal methamphetamine for $800.00 USC from DORSEY, facilitated by GARNER, utilizing a CS and UC. On March 3, 2020, the CS placed a recorded phone call to GARNER at the direction of controlling agents to set a meet for the following day. During the recorded

conversation, GARNER instructed the CS to call him the next day when the CS is ready. On March 4, 2020, CS placed a recorded phone call to GARNER in which this call was not recorded due to equipment failure, but it was witnessed by officers as well as confirmed by telephone toll analysis. During this call, the CS told GARNER that the CS was ready to come for "4" (affiant knows through training and experience this was CS's narco-coded way of asking for 4 ounces of crystal methamphetamine). CS was advised by GARNER that he (GARNER) "had not messed with that in a while." Then, GARNER advised he would call the CS back. Affiant notes that during this time in the investigation, agents were aware from T-III interceptions that GARNER was transitioning to a new cellular telephone device for conducting narcotics transactions. GARNER did attempt to call the CS back from cellular telephone number 346-324-9754 (this cellular device was later identified as GARNER's replacement device, and agents did obtain court authorization for T-III interceptions of wire and electronic communication to this device on June 16, 2020). The CS did not answer the incoming call from cellular telephone number 346-324-9754 and soon after received multiple incoming calls from cellular telephone number 832-971-2459. Agents identified cellular telephone number to be utilized by DORSEY based on multiple T-III interceptions on GARNER Target Devices. The CS then placed a recorded outgoing call to DORSEY's device as directed by controlling agents. GARNER answered the call on DORSEY's device and instructed the CS to call cellular telephone number 832-971-2459 back when the CS was ready to meet and further instructed that "he," indicating someone other than GARNER, would meet the CS near Old Galveston Rd. During this call with the CS, GARNER asked the CS who the CS would be with, indicating to agents GARNER was screening who the CS would bring to the meet in an attempt to be cautious. At the direction of the controlling agents, CS placed a second call to DORSEY's cellular telephone and spoke directly with DORSEY. DORSEY instructed the CS to travel to the La Fronda Motel located at 306 Winkler Dr, Houston, Texas. CS and UC then traveled to this location and was further instructed upon arrival by DORSEY to park near a red vehicle in the lot and instructed the CS to walk up the stairs of the motel to meet with DORSEY. The UC then handed the CS $800.00 USC and an audio/video recording device. The CS then met with DORSEY in a motel room on the second floor and conducted the transaction. After the purchase took place, the CS returned to the UC vehicle and immediately turned over the crystal methamphetamine to the UC. The CS was searched before and after this operation took place to ensure that the CS had no contraband prior to the drug transaction.

8. On June 25, 2020, agents conducted surveillance of 8118 Detroit St, Houston, Texas in conjunction with authorized T-III interceptions of GARNER's Target Device. During this surveillance, agents were notified by monitoring agents of a pending narcotics transaction set to take place between GARNER and Donald CUNNINGHAM (hereinafter referred to as CUNINGHAM). Agents learned that CUNNINGHAM contacted GARNER and requested "clear." Agents know, based on training and experience, that the term "clear" is narco-coded language for crystal methamphetamine. Agents conducted research through law enforcement databases and found that the cellular telephone number 281-639-9022 had a history of being utilized by CUNNINGHAM. Agents further learned that CUNNINGHAM was originally advised by GARNER to wait due to the presence of police in the area. Agents also learned from the T-III interceptions of GARNER that CUNNINGHAM advised he would be at the location in approximately 15 minutes. Agents continued surveillance of 8118 Detroit St, Houston, Texas and observed a white Chevrolet truck arrive at the location and only stay for a

short amount of time before leaving. Agents then observed the truck travel to the Pemex service station located across the street and physically observed CUNNINGHAM exit the truck. Affiant was able to positively identify the subject as Donald CUNNINGHAM by sight based on a Texas Driver License photo observed during research of CUNNINGHAM prior to his arrival. Agents observed CUNNINGHAM leave the store after making a purchase inside without meeting with any other persons. After CUNNINGHAM drove away, Houston Police Department marked units were able to locate his vehicle with the direction of surveillance agents and obtain probable cause for a traffic stop after observing violations. As a result of the traffic stop, CUNNINGHAM was found to be in possession of approximately 61 grams of crystal methamphetamine, 2 grams of crack cocaine, and 2.6 grams of heroin. Agents were able to confirm that CUNNINGHAM was in possession of the cellular telephone carrying number 281-639-9022. Agents believe, based on the physical surveillance, a statement provided by CUNNINGHAM admitting he just purchased the narcotics officers found, and T-III interceptions that the narcotics found in possession of CUNNINGHAM were purchased at 8118 Detroit St from the GARNER DTO. Agents were able to confirm, based on physical surveillance and GPS data from GARNER's device, that GARNER was present at 8118 Detroit St during the time that CUNNINGHAM was there. Agents did receive T-III interceptions after the arrest of CUNNINGHAM, directly linking GARNER to the narcotics located on CUNNINGHAM.

9. I request that this complaint, affidavit, and arrest warrant be sealed because other targets of this investigation still remain at large, and disclosure of the contents of this affidavit will likely result in their flight from prosecution and destruction of evidence. Other targets' discovery of the facts and investigation tools (including the T-III interception) referenced in this affidavit will seriously jeopardize this ongoing investigation.

Jason Rogers
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to telephonically on September 11, 2020, and I hereby find probable cause.

Sam S. Sheldon
United States Magistrate
Southern District of Texas